**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KANDEE COOLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO 07-0822-KD-M** |
| | ) | |
| **BOARD OF SCHOOL COMMISSIONERS** | ) | |
| **OF MOBILE COUNTY, ALABAMA and** | ) | |
| **DR. HAROLD DODGE, in his official and** | ) | |
| **individual capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This action is before the court on the motion for summary judgment filed by defendants

Board of School Commissioners of Mobile County, Alabama and Dr. Harold Dodge, former

superintendent, and supporting documents; plaintiff Kandee Cooley's response and supporting

documents; and defendants' reply (docs. 73, 75-77, 78).  Upon consideration of the pleadings,

and for the reasons set forth herein, defendants' motion for summary judgment is **GRANTED**

and plaintiff's claims are **DISMISSED** with prejudice.

I. Background

Plaintiff filed her complaint in the United States District Court for the Middle District of

Alabama and her case was subsequently transferred to the United States District Court for the

Southern District of Alabama.  Plaintiff's claims against the State of Alabama Department of

Education and Dr. Joseph D. Morton have been  dismissed (docs. 54, 57).  This action is now

before the court on plaintiff's second amended complaint against the defendant School Board[1]

---

[1] Plaintiff also names the Mobile County Public School System as a defendant.  However, the school system is not a separate legal entity from the School Board.

and defendant Dodge, individually and in his official capacity.

Plaintiff brings a claim for violation of the Equal Protection Clause of the Fourteenth Amendment through 42 U.S.C. § 1981 and § 1983; a claim for violation of the Family Medical Leave Act, 29 U.S.C. § 2600; a claim for violation of the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq*.; a claim for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Title VII) and 42 U.S.C. § 1981; and a state law claim for breach of contract.

II. <u>Findings of Fact</u>[2]

Cooley, a tenured teacher, taught at the Calloway-Smith Middle School in the Mobile County Public School System.  The System is administered by the defendant School Board. Dodge was superintendent during the relevant time period.  Plaintiff injured her knee while intervening in a student fight in October 2001.  She was off work, returned briefly in October and November 2001, but was ultimately approved for medical leave on December 13, 2001 due to the injury.  Plaintiff never returned to work.

Plaintiff received ninety (90) days injury compensation for the months of October, November and December, 2001, pursuant to <u>Ala. Code</u> § 16-1-18.1(d) (doc. 39, complaint at ¶ 18, 21; doc. 73-6, p. 33).  Plaintiff was placed on leave without pay beginning January 3, 2002 and her twelve weeks of leave under the Family Medical Leave Act (FMLA) was scheduled to end March 27, 2002.  Her expected date of return was August 2002. (doc. 75-6, p.2, Certification

---

[2] The Court views the facts in the light most favorable to Cooley. <u>Miller v. King</u>, 384 F.3d 1248, 1258-59 (11th Cir.2004) (citing <u>Burton v. City of Belle Glade</u>, 178 F.3d 1175, 1187 (11th Cir.1999)) (When ruling on a motion for summary judgment, the court "must view all evidence and all factual inferences therefrom in the light most favorable to the non-moving party.")

of Employee on Leave without Pay).

While receiving FMLA benefits, plaintiff's insurance premium did not increase (doc. 39, ¶ 36-38).  In February 2002, plaintiff was notified that her insurance premium would increase from $172.00 to $586.00 (doc. 75-3; doc. 75-6, p.2, comment indicating that premiums were due for May in the amount of $172.00 and June and July in the amount of $586.00 per month).  However, plaintiff stopped paying the insurance premium and her health insurance coverage lapsed.[3]  In August 2002, plaintiff was notified that she needed to apply for extended leave in order to maintain her benefits.  She continued on leave until she was terminated July 2, 2007.

On August 16, 2005, Dodge notified plaintiff by letter that he had recommended termination of her employment[4] because she had not reported to work since 2001, had exceeded the two year leave of absence provision under Alabama law, and had neglected to communicate with the School System in regard to her employment status (doc. 75-5, p. 4).  The School Board approved the recommendation and plaintiff was notified by letter of September 15, 2005 (doc. 75-11, p.3).  At some point after receipt of this letter, plaintiff filed another charge of discrimination with the Equal Employment Opportunity Commission which she alleges resulted in the issuance of another "Cause Finding" in January 2007. (doc. 39, p. 14).

Plaintiff appealed the decision to the State Board of Adjustment pursuant to the Teacher

---

[3] Because plaintiff was on medical leave of absence, she could apply for reinstatement during the next open enrollment period (doc. 73-6, p. 75).

[4] The parties reference an earlier notice of termination. In 2003, the Board issued a termination notice to plaintiff and approximately 200 other teachers for failing to comply with continuing education requirements necessary to renew their teaching certificates.  Plaintiff appealed because she had the necessary continuing education hours and the decision was reversed (doc. 73-6, p. 71, Affidavit of Personnel Administrator George H. Smith; doc. 73-6, p. 33, Arbitrator's decision).

Tenure Act.  Ala. Code § 16-24-20.  The Hearing Officer-Arbitrator entered a decision after the

hearing wherein he found that plaintiff's medical leave had been extended beyond the statutory

two years available under Ala. Code § 16-24-13.  Based on the School Board's action, the

Hearing Officer found that it had waived the two year period.  He also found that plaintiff could

not be terminated for not communicating with the Board because she was only required to

contact the Board when she was ready to return to work. Citing the recent but delayed award

from the Board of Adjustment regarding plaintiff's injury compensation,[5] the Hearing Officer

found that plaintiff could now "resume treatment with the goal of returning to work at some

point in the foreseeable future." (doc. 73-6, p. 36)  He entered an award on March 6, 2006,

stating as follows:

> The Board shall take no action against the Grievant at this time.  She shall retain
> her tenure status as a teacher and as an employee of the Board.  The Board shall
> permit the Grievant to return to work upon the receipt of a report from the
> Grievant's treating physician that states that the Grievant is able to perform all of
> the necessary and essential functions of her job.
>
> The Board may terminate the Grievant's employment contract after July 1, 2007
> if the Grievant is unable to return to work by that time.  The Board may
> reasonably conclude that the Grievant's inability to return to work after this
> extended period of leave rendered her permanently disabled and unable to
> perform the necessary and essential functions of her job.

(doc. 73-6, p. 38-39).

On June 6, 2007, plaintiff wrote Assistant Superintendent Paul Tate to request a

reasonable accommodation, stating as follows:

> I am not able to return to work on July 1, 2007.  Therefore, I am requesting more

---

[5] Plaintiff states that she had to "fight" to obtain her compensation and indicates that she
filed suit in state court to enforce obtaining her full ninety days of compensation and medical
compensation due under Ala. Code § 16-1-18.1.

> time to receive treatment for my condition as a reasonable accommodation, . . . .
> You will find attached, documentation from my treating physicians which
> indicates that I am still disabled as a result of the injury I received at work on
> September 13, 2001.

(doc. 73-6, p. 42).  Plaintiff supplemented her request with letters from her treating physicians,

including a statement of total disability ("[p]atient is totally disabled and is not able to return

back to work due to injury 9-18-2001."(doc. 73-6, p. 43)).  She also provided a letter from her

pain management physician wherein he explained that he had treated plaintiff for two years, that

she would continue to require therapy but may improve over the next several weeks or months

with additional treatment, but that it was not possible at this time for plaintiff to return to work

on July 1, 2007, based on his physical examination and clinical impressions (doc. 73-6, p. 49).

On August 10, 2007, plaintiff was notified by letter from Dodge that the School System

deemed her terminated from work as of July 2, 2007.  The letter informed plaintiff that the

termination was based upon her physician's statement that she could not return to work on July

1, 2007, and the Hearing Officer's decision that the Board may reasonably conclude that her

inability to return "after this extended period of leave rendered her permanently disabled and

unable to perform the necessary and essential functions of her job." (doc. 73-6, p. 51).

III.  Discussion

A. Summary Judgment Standard

Summary judgment should be granted only "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c).[6]  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. Id.  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof, 'the moving party is entitled to summary judgment." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (footnote omitted)).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004).

The Eleventh Circuit has expressly rejected the contention that summary judgment

---

[6]  Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall be granted:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

6

should seldom be used in employment discrimination cases because such cases "involve examination of motivation and intent".  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting Chapman v. AI Transport, 229 F. 3d 1012,1026 (11th Cir. 2000) (en banc)).  Rather, "the summary judgment rule applies in job discrimination cases just as in other cases.  No thumb is to be placed on either side of the scale." Id.

B.  Analysis

1.  Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Plaintiff alleges in her complaint that defendants established a practice of precluding state education employees from obtaining compensation for on-the-job injuries through the Alabama Worker's Compensation Act. Plaintiff alleges in her complaint that defendants' intentional failure to provide benefits under the Act violates the Equal Protection Clause because other similarly situated employees in Alabama have the right to obtain such compensation.

Defendants argue that summary judgment should be granted in their favor because they are not the proper defendant.  Defendants argue that the procedures for obtaining compensation for an on-the-job injury through the State Board of Adjustment were established by the Alabama State Legislature and not by defendants. See Ala. Code § 16-1-18.1.  Defendants also argue that they are exempt from the Worker's Compensation Act pursuant to Ala. Code § 25-5-50. Defendants also argue that any claim arising from her injury and her pursuit of benefits through the State Board of Adjustment, is barred by the two-year statute of limitation applicable to Equal Protection claims brought in Alabama.

Plaintiff may not rely on her complaint and other pleadings to avoid summary judgment

against her. <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 592 (11th Cir.1995), <u>cert.</u>

<u>denied</u> <u>sub</u> <u>nom.</u>, <u>Jones v. Resolution Trust Corp.</u>, 516 U.S. 817 (1995)(citation omitted) ("In

opposing a motion for summary judgment, a 'party may not rely on his pleadings to avoid

judgment against him.'").  Additionally, "[t]here is no burden upon the district court to distill

every potential argument that could be made based upon the materials before it on summary

judgment.  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the

complaint but not relied upon in summary judgment are deemed abandoned." <u>Id</u>. at 599

(citations omitted); <u>see</u> <u>also</u> <u>Lyes v. City of Riviera Beach, Fla.</u>, 126 F.3d 1380, 1388 (11th

Cir.1997) (explaining that "the onus is upon the parties to formulate arguments").

      Plaintiff did not respond to this argument, nor did she include a claim under the Equal

Protection Clause in her list of  "Causes of Action" in her response.  Accordingly, the plaintiff

has affirmatively abandoned this cause of action and thus summary judgment is due to be

**GRANTED**.

      In the alternative, the motion for summary judgment is also due to be granted on the basis

that the statute of limitations has run on this claim.  There is no dispute of fact that plaintiff was

injured on the job in September 2001 (doc. 73-6, p. 9, plaintiff's deposition).  At that time, she

was entitled to benefits under Ala. Code. § 16-1-18.1 which provides for persons such as

plaintiff who are employed by school boards and injured on the job, and was not entitled to

benefits under the Alabama Worker's Compensation Act.  In her complaint, plaintiff states that

she was entitled to ninety (90) days on the job injury pay and that she received "the remaining

payment of her ninety days" in July 2003 after she filed a Writ of Mandamus in the Circuit Court

in June 2003. (doc. 39, p. 6-7; see also doc 73-6, p. 7, plaintiff's deposition).  Plaintiff also

alleges that she "was denied benefits and lost wages related to her on-the-job injury dating back to 18 September of 2001, that she would have been entitled to, if she, along with other public education employees in the State of Alabama were entitled to benefits from the Alabama Worker's Compensation Law . . . ." (Id. at p. 8).  Therefore, plaintiff's claim accrued, at the latest, in July 2003, when she received the last of her benefits from the State Board of Adjustment.

In Alabama, the statute of limitations for a § 1983 action is two years.  Lufkin v. McCallum, 956 F.2d 1104, 1106, 1108 (11th Cir.), cert. denied, 506 U.S. 917 (1992); Ala. Code § 6-2-38(l).   Plaintiff filed this lawsuit in November 2007.  Thus, any cause of action plaintiff may have had under the Equal Protection Clause based upon her allegation that she did not receive Worker's Compensation benefits when she was injured is barred by the statute of limitation.

Upon consideration of the foregoing, the court finds that there is no genuine issue of material fact and defendants' motion for summary judgment is **GRANTED** as to plaintiff's claim under the Equal Protection clause**.**

2.  Violation of the Family Medical Leave Act

Plaintiff alleges that she was entitled to receive twelve weeks of leave under the FMLA with her insurance premiums remaining at $172.00.  She alleges the defendants violated the FMLA because she not allowed to keep her holiday pay and benefits or receive coverage under the Consolidated Omnibus Budget Recovery Act (COBRA).

In their motion, defendants argue that plaintiff  "dropped" her claim under the FMLA. Defendants rely upon plaintiff's response to interrogatories wherein she was asked to "state each

fact upon which [she based her] contention that Harold Dodge [and the School Board] has violated the Family Leave Act", to which plaintiff responds "I don't have a family medical leave case" (doc. 73-6, p.25). In her response to the motion for summary judgment, plaintiff does not rebut defendants' argument and does not include a cause of action under the FMLA in her list of "Causes of Action". Also, the evidence indicates that plaintiff was granted leave under the FMLA. The School Board's insurance clerk certified that plaintiff was granted such leave which was to end March 27, 2002 (doc. 75-6, p.2). The clerk also commented that plaintiff's insurance premium for May 2002 was $172.00 and the premium for June and July 2002 would be $586.00 (doc. 75-6, p.2). Thus it appears that plaintiff's insurance premium remained at $172.00 per month at least until May 2002.

Accordingly, the court finds that plaintiff has conceded her claim under the FMLA in her response to the interrogatories. Therefore, summary judgment is **GRANTED** in favor of defendants as to plaintiff's second cause of action.

   3.   Violation of the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq*

Plaintiff alleges that her employer, defendant School Board, violated the ADA because it terminated her teaching contract July 2, 2007, instead of granting her request to "accommodate her by allowing her to continue to remain on leave until her condition was made better".[7]

---

   [7] Plaintiff's third cause of action appears to be against the School Board even though Dodge is identified as the superintendent of schools. To the extent that this cause of action may have been brought against Dodge in his individual capacity, summary judgment is **GRANTED** in his favor. Albra v. Advan, Inc., 490 F.3d 826, 830 (11th Cir. 2007) (affirming dismissal of claims against defendants in their individual capacity and recognizing that individual liability is precluded for violations of the ADA's employment discrimination provision). To the extent that plaintiff's cause of action may have been brought against Dodge in his official capacity, summary judgment is **GRANTED** in his favor. Official capacity claims are considered claims against the governmental entity by which the defendant is employed, i.e, the School Board. See

Defendant School Board, for purposes of summary judgment, assumes plaintiff is disabled.  The defendant argues that plaintiff was not a qualified individual at the time her contract was terminated since she could not perform the essential duties of her job and that allowing plaintiff to continue on medical leave indefinitely is not a "reasonable accommodation".  Accordingly, its refusal to do so did not violate the ADA.  Defendant also points out that plaintiff's absence has caused a financial and administrative hardship because it has to place a substitute teacher in plaintiff's position while she is on leave and that the School Board receives less funding for a substitute than a contract teacher.

Plaintiff responds that she is a qualified individual because "she is a teacher and can teach.  But, she could not return to work.  But, she asked [the School Board] to allow her more time to heal." (doc. 77).  Plaintiff also responds that more recuperation time is a reasonable accommodation which would not cause an undue hardship upon the defendant because she "does not have a position at the school that has to be filled by a substitute teacher" (doc. 77).[8]

Pursuant to the ADA, an employer may not discriminate against "a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees." 42 U.S.C. § 12112(a).  Discrimination has been defined to include  "not making reasonable accommodations to the known physical ... limitations of an otherwise qualified individual with a disability who is an ... employee, unless such covered entity can demonstrate

---

Smith v. Allen, 502 F.3d 1255, 1272-73 (11th Cir. 2007) (official capacity suits are another method to plead an action against the entity of which an officer is an agent).

[8] Plaintiff relies upon a letter from the Assistant Superintendent explaining that she had been transferred out of her middle school and placed on leave.  Plaintiff asserts that by so doing, her position at the middle school could have been filed by a teacher instead of a substitute.

that the accommodation would impose an undue hardship on the operation of the business ....″ 42

U.S.C. § 12112(b)(5)(A).  ″ The term reasonable accommodation means, [in relevant part]:

Modifications or adjustments to the work environment, or to the manner or circumstances under

which the position held or desired is customarily performed, that enable a qualified individual

with a disability to perform the essential functions of that position[.]″ 29 C.F.R. §

1630.2(o)(1)(ii).

 In Holly v. Clairson Industries., LLC, 492 F.3d 1247 (11th Cir. 2007), the Eleventh

Circuit explained that ″[u]nder the controlling law in this Circuit, the burden-shifting analysis of

Title VII employment discrimination claims is applicable to ADA claims.″ Id. at 1255.

Therefore, the burden is upon plaintiff to establish her prima facie case.  To do so, she ″must

show: (1) [she] is disabled; (2) [she] is a qualified individual; and (3) [she] was subjected to

unlawful discrimination because of [her] disability.″ Id. at 1255 (internal quotations and citation

omitted).  If plaintiff can establish her prima facie case of discrimination, the burden then shifts

to the defendant School Board to ″articulate a legitimate, nondiscriminatory reason for the

challenged action.″ Wascura v. City of South Miami, 257 F.3d 1238, 1242 (11th Cir. 2001).  If

the School Board does so, then the presumption of discrimination is eliminated and plaintiff must

″proffer sufficient evidence to create a genuine issue of material fact as to whether each of the

defendant's proffered reasons is pretextual.″ Id. at 1243.

 Assuming for purposes of summary judgment that plaintiff is disabled, the court will

consider whether she has proffered sufficient evidence to establish the second element of her

prima facie case: that she is a ″qualified individual″.  A qualified individual as defined in the

ADA, is an individual with a disability who, ″with or without reasonable accommodation, can

perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  "Essential functions" consist of the "fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1).  Also, a "job function may be considered essential for any of several reasons, including but not limited to the following:  The function may be essential because the reason the position exists is to perform that function" or "[t]he function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." Id. at (n)(2)( i) & (iii).  Therefore, plaintiff  "must show either that [she] can perform the essential functions of [her] job without accommodation, or, failing that, show that [she] can perform the essential functions of [her] job with a reasonable accommodation." Davis v. Fla. Power & Light Co., 205 F.3d 1301, 1305 (11th Cir.) (citation omitted).  "Thus, if [she] is unable to perform an essential function of [her] ... job, even with an accommodation, [she] is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA." Id. Attendance is an essential function of plaintiff's duties as a teacher.  See Kurek v. North Allegheny School District, 233 Fed. Appx. 154 (3rd Cir. 2007)[9] (holding that working a seven and three-quarter hour workday is an essential function of a teacher's duties); see also Davis v. Florida Power & Light Co., 205 F.3d 1301, 1306 (11th Cir. 2000) (finding that overtime work was "akin to job presence, which has been held to be an essential function of a job") (citing Tyndall v. National Educ. Ctrs. Inc., 31 F.3d 209, 213 (4th Cir. 1994) ("An employee who cannot meet the attendance requirements of [a university teacher] cannot be considered a

---

[9] Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority. Fed.R.App.P. Rule 32.1; see also Third Circuit LAR 2, App. I, IOP 5.7.

'qualified' individual protected by the ADA.")); see also King v. Kennametal,IP.G, 2005 WL

2475718, *3 (S.D. Ga. October 6, 2005) (explaining that "[i]t is well established that regular

attendance can be an essential function of most jobs.").

The Eleventh Circuit's decision in Wood v. Green, 323 F. 3d 1309 (11th Cir. 2003) is

dispositive of this claim.  Wood sought an indefinite leave of absence to accommodate cluster

headaches which is similar to plaintiff's request for an indefinite leave of absence to recover

from her knee injury.  In reversing the district court's denial of Green's motion for judgment as a

matter of law, the Circuit Court explained that

> an employer did not violate the ADA by "refusing to grant [an employee] a period
> of time in which to cure his disabilities where the employee sets no temporal limit
> on the advocated grace period, urging only that he deserves sufficient time to
> ameliorate his conditions." Significantly, [the provisions defining a qualified
> individual with a disability, 42 U.S.C. § 12111(8); 45 C.F.R. § 1232.3(i),] contain
> no reference to a person's future ability to perform the essential functions of his
> position. To the contrary, they are formulated entirely in the present tense,
> framing the precise issue as to whether an individual "can" (not "will be able to")
> perform the job with reasonable accommodations. Nothing in the text of the
> reasonable accommodation provision requires an employer to wait for an
> indefinite period for an accommodation to achieve its intended effect. Rather,
> reasonable accommodation is by its terms most logically construed as that which,
> presently, or in the immediate future, enables the employee to perform the
> essential functions of the job in question.

Wood, 323 F.3d at 1313 (citing Duckett v. Dunlop Tire Corp., 120 F. 3d 1222, 1226 (11th Cir.

1997) (quoting Myers v. Hose, 50 F.3d 278, 283 (4th Cir.1995) (internal citations omitted)).

The Court further explained that

> [w]hile a leave of absence might be a reasonable accommodation in some cases,
> Wood was requesting an indefinite leave of absence. Wood might return to work
> within a month or two, or he could be stricken with another cluster headache soon
> after his return and require another indefinite leave of absence. Wood was not
> requesting an accommodation that allowed him to continue work in the present,
> but rather, in the future-at some indefinite time. The Duckett court parenthetically
> noted that more compelling facts might lead to a different result. For example, the

ADA might be violated "if an employee was terminated immediately upon becoming disabled without a chance to use his leave to recover. Wood was not terminated immediately upon becoming disabled. He had been granted years of discretionary leave and had been on a discretionary leave for over one month at the time of his termination. While Duckett dealt with indefinite leave, the holding of that case is that an accommodation is unreasonable if it does not allow someone to perform his or her job duties in the present or in the immediate future.

Wood, 323 F.3d at 1314 (internal quotations and citations omitted).

There is no factual dispute that plaintiff has been on leave since November 2001 and as of June 2007, her physicians determined that she was totally disabled and could not return to teach.   On June 6, 2007, plaintiff requested more leave time to receive treatment but she did not provide defendant with any estimate as to when she may be able to return to work.  With her request, plaintiff provided a statement from her pain management physician to the effect that "[p]atient is totally disabled and is not able to return back to work due to injury 9-18-2001."(doc. 73-6, p. 43).  Subsequently, her physician, by separate letter, explained that he had been treating plaintiff for two years and stated as follows:

 "I do not feel that she is able to return to work at this time from the type of work she describes to me required by her usual job duties.  She may improve over the next several weeks or months with additional treatment, although this is not certain."

(doc. 73-6, p. 49).  The physician's assessment following a period of leave to recover which began November 2001, indicates that plaintiff will not be able to perform an essential function of her job, i.e., attendance,  in the present or immediate future. Wood, 323 F.3d at 1314.  The Eleventh Circuit has explained that a reasonable accommodation does not require waiting indefinitely for a plaintiff's "medical conditions to be corrected, especially in light of the uncertainty of cure" and interpreted the ADA to "cover[] people who can perform the essential functions of their jobs presently or in the immediate future." Wood, 323 F.3d at 1314 (citation

15

omitted).  Additionally, the fact that the School Board had allowed plaintiff over five years of leave as a prior accommodation, does not make an accommodation of indefinite leave reasonable. Holbrook v. City of Alpharetta,112 F. 3d 1522, 1528 (11th Cir. 1997).  Moreover, the Hearing Officer for the State Board of Adjustment determined that "[t]he Board may terminate the Grievant's employment contract after July 1, 2007 if the Grievant is unable to return to work by that time.  The Board may reasonably conclude that the Grievant's inability to return to work after this extended period of leave rendered her permanently disabled and unable to perform the necessary and essential functions of her job." (doc. 73-6, p. 38-39).

Therefore, because plaintiff cannot perform the essential functions of her duties as a teacher, with or without a reasonable accommodation, she has failed to establish that she is a "qualified individual" under the ADA.  Accordingly, because plaintiff has not met her burden of establishing that she is a qualified individual, summary judgment is **GRANTED** in favor of defendant School Board as to plaintiff's third cause of action. See Clark, 929 F.2d at 608 ("If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof, 'the moving party is entitled to summary judgment.") (citation omitted)

4. Retaliation under Title VII and 42 U.S.C. § 1981

Plaintiff alleges that she was terminated in September 2005 and July 2007 in retaliation for the sexual harassment charge filed with the Equal Employment Opportunity Commission

against the School Board and her school principal in 2002. [10] (doc. 39, p. 14).[11]

Defendants concede that plaintiff's filing of an EEOC charge in 2002 and a Title VII lawsuit in 2003 were protected activities and that the notice of termination of September 2005 and her ultimate termination in July 2007 were adverse employment actions. However, defendants argue that plaintiff cannot establish a causal connection between the 2002 charge and the 2003 Title VII lawsuit, and the decision to terminate plaintiff's contract in August 2005 and the ultimate termination in July 2007. Defendants also argue that even should plaintiff establish a causal connection, she cannot show that defendants' legitimate non-discriminatory reasons for their actions were a pretext. Defendants also argue that Dodge cannot be liable because he is not plaintiff's employer.

Plaintiff responds that in November 2004, defense counsel stated at the trial of her sexual harassment action that plaintiff had "a job to come back to" and that an inference can be made from that statement that the School Board continued her employment because of her lawsuit but when the suit conclusively ended June 3, 2005 when she withdrew her appeal, (see doc. 75-5, p.5), she was then terminated in August 2005 in retaliation for filing the suit. Plaintiff argues that she has demonstrated a causal connection or at least demonstrated that the protected activity (withdrawing her appeal) and adverse actions were not wholly unrelated. She also argues that

---

[10] Plaintiff filed a sexual harassment action against her principal and the School Board in 2003 (03-cv-0569-WS-B).

[11] Plaintiff alleges that she had to file another EEOC complaint related to her 2005 termination which resulted in a "second Cause Finding being issued to Plaintiff for continued Retaliation" . . . with the most recent Cause Finding being awarded to Plaintiff in January of 2007" (doc. 39, p.14). Plaintiff provided a copy of a "Notice of Right to Sue" from the Department of Justice dated June 13, 2007 (doc. 28-2).

the School Board's three reasons for terminating her employment as expressed in Dodge's recommendation plus the School Board's assertion that a financial burden was created by carrying plaintiff as a teacher were pretexts for retaliation.

To the extent that plaintiff brings this cause of action for retaliation pursuant to 42 U.S.C. § 1981, summary judgment is **GRANTED** in favor of Dodge and the School Board.  "Section 1981 of Title 42 protects an individual's right to be free from racial discrimination in the 'making, performance, modification, enforcement, and termination' of contracts[.]" Selby v. Tyco Healthcare Group, L.P., 2008 WL 5147927, 3 (11th Cir.  December 9, 2008) (unreported opinion)[12] (citation omitted).  However, plaintiff does not allege a claim for race discrimination against the defendants [13] in her second amended complaint and neither were her EEOC charges or her prior litigation based on race.  Also she does not allege that she was retaliated against for protected activity involving race discrimination toward herself or another person. Discrimination due to race is a necessary component of a claim under § 1981.[14]  Tucker v. Talladega City

---

[12]  Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority. Rule 36-2 of the United States Court of Appeal for the Eleventh Circuit.

[13]  Plaintiff brought her sixth cause of action against the Alabama State Board of Education and Dr. Joseph Morton under 42 U.S.C. § 1981 and alleged that she was treated differently than a similarly situated white employee.   However, that cause of action has been dismissed. (Doc. 54).

[14] Addressing equal rights under the law, § 1981 reads as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

Schools, 171 Fed. Appx. 289, 295-296, 2006 WL 688967, 5 (11th Cir. 2006) ("Title VII does not require a plaintiff bringing a retaliation claim to also bring a race discrimination claim. However, we also recognize that § 1981, unlike Title VII, is directed exclusively toward racial discrimination and, as a result, the plaintiff's claim must allege discrimination due to race.").

Also, in her response, plaintiff argues that she has brought a retaliation claim against Dodge in his individual capacity pursuant to 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment. However, plaintiff's cause of action for retaliation was plead under Title VII and 42 U.S.C. § 1981 and was not plead as an Equal Protection claim brought pursuant to 42 U.S.C. § 1983. Plaintiff cannot amend her complaint to add a new cause of action in her response to the motion for summary judgment. See Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314 -1315 (11th Cir. 2004) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S.Ct. 992 (2002)) (finding that although a liberal pleading standard is mandated by the Supreme Court for civil complaints under Federal Rule of Civil Procedure 8(a), the standard "does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage" and explaining that "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a)"); see, e.g., Fisher v. Metro. Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir.1990) (allegation not raised in plaintiff's second amended complaint but in response to defendant's summary judgment motion was not properly before court); Thompkins v. Lil' Joe Records, Inc., 2007 WL 316302, *10 (11th Cir. 2007) ("Thompkins apparently first attempted to assert his would-be § 1114 claim in his response to Lil' Joe's motion for summary judgment. This is procedurally improper; at the summary judgment stage, Thompkins should have sought to

amend his complaint in accordance with Federal Rule of Civil Procedure 15(a) if he wished to add a claim.") (citation omitted).

Therefore, only plaintiff's cause of action under Title VII remains.  To the extent that this cause of action is brought against Dodge, summary judgment is **GRANTED** in his favor.  The Eleventh Circuit has clarified that there is no individual liability under Title VII. See Dearth v. Collins, 441 F. 3d 931 (11th Cir. 2006) (holding that relief under Title VII is available against the employer and not against individuals whose action may constitute a violation); Busby v. City of Orlando, 931 F. 2d 764, 772 (11th Cir. 1991).

Title VII prohibits retaliation "because [an employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). Plaintiff has not proffered direct evidence of retaliation.  Therefore, her claim is based upon circumstantial evidence, and the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973), applies, but the ultimate burden of proof that actual, intentional retaliation remains with plaintiff . See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089 (1981).

Under the burden-shifting framework, plaintiff must establish a prima facie case of retaliation. To do so, she must show that "[(1) she] engaged in statutorily protected activity, [ (2) she] suffered a materially adverse action, and [(3) ] there was some causal relation between the two events." Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir.2008) (citing Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2410-16 (2006)).  "To prove a causal connection, [the Eleventh Circuit requires]a plaintiff only to demonstrate that the

protected activity and the adverse action were not wholly unrelated" and has "held that a plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) (citations omitted).

"After the plaintiff has established the elements of a claim, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability." Goldsmith, 513 F.3d at 1277 (citation omitted). Should the employer succeed in meeting this burden, plaintiff must then "demonstrate that the proffered reason was not the true reason for the employment decision.... [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dep't of Cmty. Affairs v. Burdine,101 S.Ct. 1089, 1095 (1981). "The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct." Goldsmith, 513 F.3d at 1277 (citation omitted).

The parties do not dispute that defendant School Board was aware of the protected conduct and the School Board concedes the first two elements of plaintiff's prima facie case: that filing EEOC charges and filing a Title VII sexual harassment action were protected activities and that terminating plaintiff's employment was an adverse employment actions.  However, defendant argues that plaintiff cannot establish a causal connection between her participation in protected activity in 2002 and 2003 and the adverse employment decisions to terminate

plaintiff's employment in September 2005 and July 2007.

Plaintiff responds that the fact that Dodge recommended terminating her employment in August 2005 within two months of the withdrawal of her appeal in June 2005, raises an inference that defendant terminated her employment in retaliation for the lawsuit as soon as it knew the suit was concluded. Plaintiff argues that she has established a causal connection and therefore, established her prima facie case of retaliation.

Assuming for argument that plaintiff could establish a prima facie case of retaliation, which is highly unlikely, defendant School Board terminated plaintiff in July 2007 because she could not return to work after a leave period which began in November 2001. This reason was legitimate and non-discriminatory, and the record does not contain any evidence but for plaintiff's conclusory allegations, that defendant terminated her employment in retaliation for her alleged protected activity.

Therefore, summary judgment is **GRANTED** in favor of the defendant School Board as to plaintiff's cause of action for retaliation.

5. Breach of contract

Plaintiff brings her fifth cause of action for breach of contract against the School Board and Dodge. To the extent that this claim is brought against Dodge, summary judgment is **GRANTED** in his favor. Dodge was not her employer and did not contract with plaintiff. Moreover, under Alabama law, only the School Board may cancel the contract of teacher on continuing service status. Ala. Code § 16-24-9 (2003).

In her complaint, plaintiff alleges that she was a twelve month contract employee and that defendant breached the contract "by refusing to give her all of her entitled benefits . . . for the

period of time that Plaintiff had been on extended medical leave recovering from the injury she received on the job", and for "liquidating funds from her wages during the months of June and July 2002"(doc. 39, p. 16). [15]

Defendant School Board argues that any claims plaintiff may have for loss of pay, failure to provide benefits, claims related to her State Board of Adjustment claim, and any claim that defendant breached the contract when plaintiff was placed on leave in January 2002, arising before the judgment in the trial of her sexual harassment litigation against the School Board (Civil Action No. 03-569-WS-B), are barred by the doctrine of *res judicata*.

Defendant also asserts that there was no breach of contract in regard to plaintiff's ultimate termination in 2007 because plaintiff was given notice as required by Alabama law, contested the defendant's decision, and received a hearing.  Defendant argues that plaintiff was terminated in 2007 because she was unable to return to work and thus, defendant has not breached its contract with plaintiff.

Plaintiff does not respond to defendant's argument that claims for breach of contract arising before judgment in her sexual harassment litigation are barred by *res judicata*.  Thus, the

---

[15] Plaintiff also states that defendant caused her to lose "more than a year off of her teaching certificate, due to the failure of the [defendant] to transmit the information necessary to reinstate the Plaintiff's teaching certificate or the [Alabama State Board of Education] who claim[] they never received the information" (doc. 39, p. 16).  Although plaintiff mentions this act on the part of defendant, i.e, the failure to transmit information, as a possible element of her breach of contract claim, she has failed to allege any facts in support.  As best the court can ascertain, this claim relates to the 2003 notice of termination, at which time the Board issued a termination notice to plaintiff and approximately 200 other teachers for failure to comply with continuing education requirements necessary to renew their teaching certificates.  Plaintiff appealed to the State Board of Adjustment because she had the necessary continuing education hours and the decision to terminate her contract on that basis was reversed (doc. 73-6, p. 71, Affidavit of Personnel Administrator George H. Smith; doc. 73-6, p. 33, Arbitrator's decision).

court finds that these claims have been abandoned.  However, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion" One Piece of Real Property, 363 F.3d at 1101; Trustees of Central Pension Fund, 374 F.3d at 1039, and must ensure that the motion is supported by at least the "evidentiary materials submitted in support of the motion for summary judgment." 363 F.3d at 1101 (internal citation omitted).  Plaintiff "may not rely on her complaint and other pleadings to avoid summary judgment against her " Resolution Trust Corp. 43 F.3d at 592, and  "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." Id. at 599 (citations omitted).

"*Res judicata*, or claim preclusion, bars a party from relitigating a cause of action that was, or could have been, raised in a previous suit between the parties that resulted in a final judgment on the merits." Sherrod v. School Bd. of Palm Beach County, 272 Fed. Appx. 828, 829 (11th Cir.2008) (citing In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir.2001)). "A party seeking to invoke *res judicata* must satisfy four elements: '(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action.' Id. (quoting In re Piper Aircraft).

This court is a court of competent jurisdiction, there was a final judgment entered following a jury trial, and the action involved the same parties, i.e., the School Board and plaintiff.   However, the two civil actions at issue did not involve the same causes of action

24

because the earlier litigation did not include a claim for breach of contract between plaintiff and the School Board.  Thus, her breach of contract claim falls under the theory of claim preclusion, or those claims which "could have been brought".   The Eleventh Circuit in <u>Sherrod</u> made clear that the

> preclusion of claims that "could have been brought" does not include claims that arose after the original complaint was filed in the prior action, unless the plaintiff actually asserted the claim in an amended pleading, but *res judicata* does not bar the claim simply because the plaintiff elected not to amend his complaint. This is true even if the plaintiff discussed the facts supporting the subsequent claim in support of his claims in the prior case.

<u>Id</u>. at 830-831 (citation omitted)   Therefore, plaintiff's claims for breach of contract arising before she filed her complaint on August 26, 2003, in Civil Action 03-0569-WS-B, are barred by *res judicata*.

Plaintiff claims breach of contract because defendant failed to give plaintiff insurance benefits during the extended leave period (doc. 39).  This claim fails due to res judicata and also on the merits.   On summary judgment, defendant provided evidence that plaintiff did not receive her insurance benefits because she did not pay the insurance premium to the Public Education and Employees Insurance Plan (PEEHIP).  Defendant explained that the school system "does not provide insurance and is not the insurance administrator for school teachers.  Insurance is provided for and administered by Public Education and Employees Insurance Plan (PEEHIP), a state agency"  (doc. 73-6, p. 74-75), Affidavit of Lois Melton, Insurance Clerk for the School Board).  Defendant further explained that beginning in 2002, plaintiff was required to pay her insurance premium direct to PEEHIP, and that when plaintiff's insurance lapsed for non-

payment, she was not allowed to reapply until the open enrollment period. (Id. at 75).[16]  Plaintiff

did not provide any evidence to rebut that of the defendant.  Therefore, there is no material

dispute regarding the fact that plaintiff did not receive her insurance benefits because she did not

pay the insurance premium to PEEHIP and thus is not a basis for a breach of contract claim.

Plaintiff also claims breach of contract due to her termination in 2007.  In response to the

motion for summary judgment, plaintiff argues only that her termination in 2007 was without a

hearing, and without a cause finding in violation of Ala. Code § 16-24-8.  She also argues that

although the Hearing Officer indicated that July 2, 2007 was the "cut-off date, that did not take

into consideration that he also ordered she get immediate medical insurance/treatment" which

she did not receive for eight months.  However, as defendant replied, plaintiff provided no

evidence that she could return to work at the time designated by the Hearing Officer, and thus,

by the terms of the previous hearing decision on her termination, her contract could be cancelled

on July 2, 2007 (doc. 73-6, p. 38, Hearing Officer's decision).  No further hearing was required

by her contract, thus plaintiff has failed to point to any provision of her contract that was

breached by defendant when she was terminated in 2007.  Accordingly, summary judgment is

**GRANTED** in favor of defendant School Board as to plaintiff's cause of action for breach of

contract based on her 2007 termination.

---

[16]  In early February 2002, a letter was sent to plaintiff from Melton wherein she
explained that plaintiff's premium of $172.00 was not deducted from her payroll because
plaintiff was on leave in February, that the premium was due for the month of February 2002,
and that plaintiff should remit payment made payable to PEEHIP to the insurance department.
The letter also explained that if payment was not received by the 10th of the month, the time the
monthly insurance report to PEEHIP was due, the plaintiff's insurance would be cancelled.  The
letter also explained that if plaintiff was "on leave of absence, not using sick leave days or do not
qualify for FMLA, [she] will need to pay $586.00 for each month while on leave." (doc. 75-3,
p.3)

6. Allegations under the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1161-1169 (COBRA).

Defendants acknowledge that plaintiff did not allege a cause of action under COBRA in her second amended complaint but argue out of caution that they have not violated the provisions of COBRA.  Plaintiff responds and argues that defendants violated COBRA by failing to give her notice that COBRA was available when her two year leave period ended and when she was allegedly terminated in 2003 and 2005.

Although COBRA is mentioned in the complaint on three occasions,[17] there is no cause of action which sets forth "a short and plain statement of the claim showing that the pleader is entitled to relief; and [ ]a demand for the relief sought." Fed. R. Civ. P. Rule 8(a)(2) and (3). Plaintiff relies upon her statement in paragraph 39 of the second amended complaint wherein she states that she "was not allowed to keep her holiday pay and benefits.  She was also not allowed to receive COBRA, which she was also entitled to." (Doc. 39).  This paragraph is included in her Second Cause of Action alleging violations of the Family Medical Leave Act for which summary judgment has been granted in defendants' favor.  Moreover, the statements in this paragraph fall short of the requirements on Rule 8.

Plaintiff cannot amend her complaint to add a cause of action under COBRA by way of

---

[17]   In the Introduction to the second amended complaint at paragraph 5, plaintiff states that her insurance was illegally cancelled and she was "denied COBRA coverage when she tried to obtain insurance coverage in order to receive treatment".  In the Statement of Facts at paragraph 22, plaintiff states that she sought help from her union, the Alabama Education Association (AEA) and that "[a]t no subsequent time did the Defendant or (AEA) tell Plaintiff about coverage through COBRA, the insurance program that was created for injured school system employees.  This was a benefit that Plaintiff was entitled to but denied".  In paragraph 39 in her Second Cause of Action under the FMLA, plaintiff states that "[s]he was also not allowed to receive COBRA which she was also entitled to." (Doc. 39).

her response to defendants' summary judgment motion.  See Gilmour, 382 F.3d at 1314-1315 (11th Cir. 2004) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S.Ct. 992 (2002)) (finding that although a liberal pleading standard is mandated by the Supreme Court civil complaints under Federal Rule of Civil Procedure 8(a), the standard "does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage" and explaining that "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a)"); see, e.g., Fisher, 895 F.2d at 1078 (5th Cir.1990) (allegation not raised in plaintiff's second amended complaint but in response to defendant's summary judgment motion was not properly before court); Thompkins,  2007 WL 316302 at *10 ("Thompkins apparently first attempted to assert his would-be § 1114 claim in his response to Lil' Joe's motion for summary judgment. This is procedurally improper; at the summary judgment stage, Thompkins should have sought to amend his complaint in accordance with Federal Rule of Civil Procedure 15(a) if he wished to add a claim.") (citation omitted). Therefore, because no cause of action under COBRA is properly before the court, the court need not address the parties' arguments.

VII.  Conclusion

For the reasons set forth herein, the court finds that there are no genuine issues of material fact and summary judgment is **GRANTED** in favor of defendants and this case is dismissed with prejudice.

**DONE** this the 13th day of February, 2009.

 **s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**